UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CLAUDETTE RHONE,**<br>204 Marley Station Road<br>Glen Burnie, Maryland 21060<br><br>          Plaintiff,<br><br>          v.<br><br>**ANTONY BLINKEN, SECRETARY,<br>UNITED STATES DEPARTMENT<br>OF STATE,**<br>2201 C. Street NW<br>Washington, DC 20520<br><br><br>          Defendant. | Civil Action No. _____<br><br><br><br>**Jury Requested** |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**COMES NOW** Plaintiff, Claudette Rhone, hereinafter ("Plaintiff"), by and through her undersigned counsel, sues the United States Department of State ("Agency" or "Defendant"), and for her cause of action states the following:

### INTRODUCTION

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq*. and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et al.* for the Defendant's unlawful sex (female), race (Black/African-American), disability (mental), and reprisal discrimination and hostile work environment harassment against the Plaintiff.

2. Since approximately 2016, Plaintiff worked for Defendant as a an EEO Specialist.

3. Since approximately 2020, Defendant subjected Plaintiff to disparate treatment regarding terms, conditions, and privileges of employment with Defendant based on Plaintiff's disability (mental), sex (female), race (Black/African-American), and reprisal.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et al*. Venue is appropriate and based on the fact that all of the actions complained herein took place within Washington, District of Columbia, and are the result of actions Defendant, a federal agency that operates within the District of Columbia.

## PARTIES

5. Plaintiff is a resident of the State of Maryland.

6. Plaintiff has a physical disability.

7. Plaintiff's race is Black/African-American.

8. Plaintiff's sex is female.

9. At the time of the actions complained of herein, Plaintiff was employed by Defendant.

10. Plaintiff is currently domiciled at 204 Marley Station Road, Glen Burnie, Maryland 21060.

11. Defendant, Department of State, is a federal agency with an office located at 2201 C. Street NW, Washington, DC 20520 and operating within the District of Columbia.

## FACTS

12. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as fully set forth herein.

2

13. On or around 2016, Defendant hired Plaintiff worked as a EEO Specialist at the Department of State. Plaintiff was a Schedule A hire, which noticed Defendant of her disability.

14. At all relevant times, Plaintiff's first-level supervisor was Erica Solloso, Chief Intake and Resolution (S/OCR).

15. At all relevant times, Plaintiff's second-level supervisor was Paige Williams, Acting Director Office of Civil Rights (S/OCR).

16. At all relevant times, Plaintiff's third level supervisor was Elizabeth Konick, Executive Director.

17. At all relevant times, Agency management, including JR, GS, GB, AD, and ER were aware of Plaintiff's race as Black/African-American.

18. At all relevant times, Agency management, including JR, GS, GB, AD, and ER were aware of Plaintiff's sex as female.

19. Since 2005, Complainant has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Anxiety.

20. Plaintiff was first diagnosed with ADHD and Anxiety, a disability within the meaning of the Rehabilitation Act of 1973, in 2005 as an undergraduate student.

21. Despite her disability, Plaintiff has been able to perform the essential functions of her position as an EEO specialist with or without a reasonable accommodation.

22. When Plaintiff's anxiety is triggered, Plaintiff suffers from insomnia, panic attacks, dizziness, vomiting, headaches, ringing in my ears, and grinding of the teeth as a few examples.

23. At all relevant times, supervisors GB and ES were aware of Plaintiff's disability.

24. On or around January 3, 2023, the Agency circulated an S/OCR internal email announcing that five GS-14 and GS-15 positions would be posted.

25. Specifically, one position was for the Data Management and Outreach team (DMO).

26. One position was for the Alternative Resolution team (ADR).

27. Three positions were for the Intake and Resolution team (I&R).

28. On or about April 11, 2023, an email was circulated with the link to the EEO Lead Specialist positions posted on USA jobs.

29. Plaintiff submitted her application to JC.

30. JC was the Schedule A Selective Placement Program Coordinator.

31. JC then sent Plaintiff's documents to MJ, Bureau of the Secretary (S/EX) Human Resources Specialist, for review.

32. MJ forwarded Plaintiff's resume to the S/OCR selecting official.

33. At the time the positions were advertised, Glenn Budd, the Deputy Director of S/OCR was the hiring official.

34. Plaintiff was deemed qualified and eligible for the Team Lead positions.

35. On or about April 27, 2023, Plaintiff was extended an interview from Ms. Solloso. Ms. Solloso also requested that Plaintiff submit a questionnaire, which was not listed as a criterion for the vacancy announcements.

36. On or about May 5, 2023, Plaintiff interviewed with a panel of three, including Paige Williams, Acting Director of S/OCR, Calli Fuller, Division Chief of Conduct, Suitability and Discipline and Robert "Bob" Shinn, Lead EEO Specialist from USAID.

37. During the interview, Plaintiff was asked which of the five Team Lead positions she desired.

38. Plaintiff responded she would like to be considered for each Team Lead position.

39. On or about May 15, 2023, Plaintiff was informed by Ms. Solloso that she was not selected for any of the five Team Lead positions.

40. Plaintiff had seniority over each selectee, MP, SM, SJ, BM, KH, for each Team Lead position.

41. Plaintiff had received excellent performance evaluations for 8 years and was more qualified than each selectee.

42. Plaintiff was most qualified for the position of Lead EEO Specialist for the formal team, which was offered to a less qualified Caucasian/White woman.

43. S/OCR has a pattern of hiring and promoting Caucasian women at a higher rate than Black/African-American women.

44. Since 2013, Plaintiff had been a board member of Blacks in Government (BIG).

45. Agency leadership, including John Robinson and Gregory Smith, were fully aware and supportive of Plaintiff's role as a board member in BIG since Plaintiff's Pathways internship with S/OCR in 2013.

46. In or around February 2017, Plaintiff's supervisor, Glenn Budd and Gregory Smith, informed Plaintiff that she was required to resign from Blacks in Government (BIG) because of a policy decision made by S/OCR leadership.

47. As a result of management's directive, Plaintiff was required to resigned as Vice President of BIG.

48. Plaintiff was told she would receive a copy of the policy requiring her to resign, but never did.

49. In or about May 2023, Plaintiff discovered that a White employee from S/OCR, AJ, was listed as a board member at Executive Women at State (EWS), contrary to the directive given to Plaintiff by S/OCR leadership.

50. Upon information and belief, S/OCR leadership approved a White employee, AJ, to remain as a board member at EWS.

51. As a result of Plaintiff being forced to retire as the Vice President of BIG, Plaintiff suffered loss of career and advancement opportunities.

52. A similarly situated Black employee, K-AY, was also asked to resign as a board member of an Employee Affinity Group.

53. Plaintiff filed an EEO complaint on or around May 15, 2023, and, therefore, engaged in protected EEO activity.

54. Plaintiff had also engaged in protected EEO activities since at least 2017.

55. Plaintiff had also engaged in protected EEO activities in May 2020 when she opposed discriminatory practices against Black women in the Office of Civil Rights (S/OCR).

56. Plaintiff named her supervisor, Erica Solloso, and S/OCR Chief of Intake & Resolution, and Acting Director, Paige Williams, as RMOs in her EEO complaint.

57. Since 2020, Plaintiff's supervisors, Erica Solloso and Margaret Phillips, began subjecting Plaintiff to unreasonable workloads of over 50 active cases. This includes Plaintiff being required to take on cases from a retiree, resulting in Plaintiff working weekends without pay. Plaintiff was also given multiple tasks to complete for many cases with a shorter time to complete them.

58. Plaintiff complained to leadership about the workload and excessive hours she worked.

59. Plaintiff also asked for comp time and despite it being "approved, in August 2023, the comp hours were never updated.

60. Plaintiff was also required to take a pop quiz based off the information in a team meeting.

61. On May 25, 2023, Plaintiff's supervisor, Ms. Solloso, asked Plaintiff to attend a formal team meeting on June 7, 2022, while Plaintiff was on a detail with the DMO team for the Executive Leadership Program (ELP).

62. Plaintiff was reporting to a different supervisor Andrea Cilliers at the time of her detail.

63. On the morning of the June 7, 2022, meeting, Plaintiff fell ill and took approved sick leave.

64. Despite being on approved sick leave and still joining the meeting, Ms. Solloso took the liberty to chastise Plaintiff.

65. Plaintiff was forced to take emergency medical leave because of the discrimination and hostile work environment she was subject to on or about September 27, 2023.

66. Prior to Plaintiff going on leave, Ms. Elizabeth Williams sent Plaintiff an email demanding that Plaintiff submit a status of all caseloads.

67. The task requested by Ms. Williams required research on over 100 cases (open and cases annotated as closed in the system but still actionable) within approximately 24 hours of her email.

68. This request to turn around the status report within 24 hours was an unreasonable request.

7

69. Plaintiff had already been preparing a list of pending assignments, as agreed, with the understanding that she would submit the information before taking leave on September 27, 2023.

70. Ms. Williams gave Plaintiff a different deadline stating she was "filling in" for Ms. Solloso while she was on leave.

71. However, Ms. Solloso had emailed the entire office on September 21, 2023, to advise that Sharon Johnson would be covering for her as Acting Chief starting September 21, 2023.

72. When Plaintiff went on leave, Plaintiff set her email inbox to forward messages to the shared complaint channel for processing.

73. When Plaintiff would log in, however, she noticed that the message had been changed to direct communications with Ms. Phillips.

74. A short time later, Ms. Solloso contacted Plaintiff regarding her changing her message.

75. On or about October 12, 2023, while Plaintiff was out on leave, Plaintiff received an email from Ms. Phillips instructing Plaintiff to draft a dismissal letter for one of her cases.

76. On or about October 16, 2023, Plaintiff received another email from my Ms. Solloso asking her to close a settlement case in the system.

77. While out on medical leave, Plaintiff was assigned over 17 new EEO cases.

78. For each newly assigned EEO case assigned to Plaintiff while on leave, acknowledgment letters had been sent indicating Plaintiff was the assigned case manager and instructing them to contact Plaintiff.

79. This caused Plaintiff distress given the initial nature for her leave.

80. Upon information and belief, Plaintiff's similarly situated colleagues with no prior EEO activity, were not assigned cases while they were out on emergency medical leave.

81. At the time Plaintiff worked with the formal team, which was comprised of only Black employees, Ms. Solloso and Mr. Budd ignored Plaintiff's requests for assistance due to the excessive workload were ignored.

82. Plaintiff's request for workload assistance was presented to the Deputy Director, GB, and the Director, GS.

83. The Deputy Director and the Director denied Plaintiff's request for workload assistance.

84. Plaintiff's White colleague requests for workload assistance were approved by the Deputy Director and the Director.

85. Plaintiff's request for the workload assistance was denied based on her race and reprisal.

86. However, when Plaintiff's White colleagues complained about excessive workload, the Agency hired additional harassment investigators.

87. When Plaintiff's White colleagues complained about excessive workload, the office posted flex connect positions calling for harassment investigators.

88. When Plaintiff's White colleagues complained about excessive workload, the office implemented a triage plan where S/OCR employees were encouraged and expected to assist with the harassment complaints.

89. On or about July 29, 2021, after Plaintiff engaged in prior protected EEO activity, Plaintiff's supervisor, Ms. Solloso, chastised Plaintiff for inquiring about how to process an incoming mail.

90. On or about July 29, 2021, after Plaintiff engaged in prior protected EEO activity, Plaintiff's supervisor, Ms. Solloso refused to assist Plaintiff on her work inquiry.

91. On or about July 20, 2023, after Plaintiff engaged in prior protected EEO activity, Ms. Phillips berated Plaintiff during a Teams call.

92. Although Plaintiff kept her camera off, Ms. Phillips' camera was on.

93. During the Teams call, Plaintiff observed Ms. Phillips lean into the camera.

94. During the Teams call, Plaintiff observed Ms. Phillips roll her eyes at Plaintiff.

95. During the Teams call, Plaintiff observed Ms. Phillips raise her voice at Plaintiff.

96. These actions were taken during the Teams call to intimidate and harass Plaintiff.

97. During the Teams call, Ms. Phillips refused to end the Teams call despite Plaintiff's repeated requests to do so.

98. During the Teams call, Ms. Phillips would rant for long periods of time.

99. During the Teams call, Ms. Phillips would pause to confirm if Plaintiff was still on the line.

100. Plaintiff remained on the Teams call and was able to confirm that she was still on the call each time Ms. Phillips stopped to confirm her presence.

101. During the Teams call, Ms. Phillips would then continue harassing Plaintiff while Plaintiff sat in silence.

102. Following this Teams call with Ms. Phillips on July 20, 2023, Plaintiff complained to Ms. Solloso, via email of how Ms. Phillips harassed her.

103. Ms. Solloso dismissed Plaintiff's complaints regarding Ms. Phillips' harassing conduct.

104. Ms. Solloso attributed the harassing behavior to Ms. Phillips being a new Team Lead position.

105. Ms. Solloso did not conduct any investigation or inquiry into Plaintiff's complaint regarding the Teams call.

106. On or about October 4, 2023, Plaintiff requested a copy of her pop quiz and power point presentation from Ms. Phillips.

107. In response, Ms. Phillips refused to provide Plaintiff with a copy the pop quiz and power point presentation.

108. Plaintiff needed the information to meet a deadline that had been set by the EEO counselor for her to provide evidence regarding her EEO complaint that she filed.

109. Plaintiff has suffered significant humiliation, embarrassment, including emotional distress as a result of the discrimination and harassment she has been subjected to by the Agency.

## COUNT ONE
### Disability Discrimination
### Rehabilitation Act of 1973, 29 U.S.C. § 701, *et al*

110. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

111. Plaintiff is a disabled individual and a member of a protected class who worked for Defendant and is entitled to equal rights under the law pursuant to 29 U.S.C. § 701.

112. Defendant, by and through their agents, discriminated against Plaintiff through conduct alleged in this Complaint.

113. The foregoing actions by Defendant constitute discrimination on the basis of Plaintiff's disability, which have infringed upon Plaintiff's terms and conditions of employment,

as well as her right to the full and equal benefit of all laws and proceedings for the security of persons and property, in violation of 42 U.S.C. § 1981.

114. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

115. Defendant Department of State is responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment.

### COUNT TWO
### Sex Discrimination
### Title VII of the Civil Rights Act, 42 U.S.C. § 2000e

116. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117. Plaintiff is a female and a member of a protected class who worked for Defendant and is entitled to equal rights under the law pursuant to 42 U.S.C. 2000e.

118. Defendant, by and through their agents, discriminated against Plaintiff through conduct alleged in this Complaint.

119. The foregoing actions by Defendant constitute discrimination on the basis of Plaintiff's sex, which have infringed upon Plaintiff's terms and conditions of employment, as well as her right to the full and equal benefit of all laws and proceedings for the security of persons and property, in violation of 42 U.S.C. § 1981.

120. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

121. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

122. Defendant Department of State is responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment.

## COUNT THREE
### Race Discrimination
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

123. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

124. Plaintiff is Black/African-American and a member of a protected class who worked for Defendant and is entitled to equal rights under the law pursuant to 42 U.S.C. 2000e

125. Defendant, by and through their agents, discriminated against Plaintiff through conduct alleged in this Complaint.

126. The foregoing actions by Defendant constitute discrimination on the basis of Plaintiff's race, which have infringed upon Plaintiff's terms and conditions of employment, as well as her right to the full and equal benefit of all laws and proceedings for the security of persons and property, in violation of 42 U.S.C. § 1981.

127. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

128. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses,

embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

129. Defendant Department of State is responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment

## COUNT FOUR
### Hostile Work Environment Harassment
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

130. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

131. Plaintiff is a female, Black/African-American, and has a disability; Plaintiff also engaged in protected EEO activities and is a member of a protected class who worked for Defendant and is entitled to equal rights under the law pursuant to 42 U.S.C. § 2000e.

132. Defendant, by and through their agents, discriminated against Plaintiff through conduct alleged in this Complaint.

133. The foregoing actions by Defendant constitute harassment on the basis of Plaintiff's sex, race, disability, and protected EEO activities, which have infringed upon Plaintiff's terms and conditions of employment, as well as her right to the full and equal benefit of all laws and proceedings for the security of persons and property, in violation of 42 U.S.C. § 1981.

134. Plaintiff's race, disability, and protected EEO activities were a motivating factor in Defendant's unlawful conduct toward Plaintiff.

135. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

136. Defendant Department of State is responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment.

137. Defendant's unlawful conduct created a climate of fear and intimidation for Plaintiff and other employees.

138. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

139. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

140. Defendant's harassing conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race, disability, and protected EEO activities.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Claudette Rhone respectfully prays that this Honorable Court grant her the following relief:

a) Enter a declaratory judgment finding that the foregoing actions of Defendant violated 29 U.S.C. § 701 and 42 U.S.C. § 2000e;

b) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal and discriminatory conduct described herein and to prevent similar occurrences in the future;

c) Order the Defendant institute a policy and procedure to be implemented against discrimination and retaliation;

d)  Award compensatory damages in a proven and determined amount to compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant alleged herein;

e)  Award reasonable attorney fees, costs, and expenses incurred for this action;

f)  Award equitable, declaratory, and injunctive relief;

g)  Pre- and post-judgment interest;

h)  Award Plaintiff punitive damages; and

i)  Order such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Dated: December 4, 2024

Respectfully submitted,

*/s/ Donna Williams Rucker*
Donna Williams Rucker
(D.C. Bar 446713)
Managing Partner
TULLY RINCKEY PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
Phone: (202) 787-1900
Fax: (202) 640-2059
drucker@fedattorney.com

Dolapo Oshin
(D.C. Bar 90011935)
Associate
TULLY RINCKEY PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
Phone: (202) 787-1900
Fax: (202) 640-2059
doshin@tullylegal.com

16

*Counsel for Plaintiff*