UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDETTE RHONE, <br><br> *Plaintiff*, <br><br> v. <br><br> MARCO A. RUBIO, <br> Secretary of State,[1] <br><br> *Defendant*. | Civil Action No. 24-3389 (RC) |

**DEFENDANT'S MOTION TO DISMISS IN PART
AND MEMORANDUM IN SUPPORT**

Marco A. Rubio, in his official capacity as the Secretary of State, respectfully moves to dismiss Plaintiff Claudette Rhone's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on which relief may be granted.

Rhone alleges discrimination on the basis of her race, sex, and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq* ("Rehabilitation Act"). *See generally* Compl. (ECF No. 1). Rhone also alleges that she faced a hostile work environment because of her race, sex, and disability, as well as in retaliation for her prior EEO activity. Compl. ¶¶ 130-140. In large part, her complaint is based on: (1) a May 2023 non-selection for several team lead positions (Compl. ¶¶ 24-43); (2) being asked to resign from the board of an employee group (Compl. ¶¶ 44-52); (3) having a large workload of active cases (Compl. ¶¶ 57-59, 77-88), and (4) being "chastised" on three occasions (Compl. ¶¶ 64, 89, 91-101).

---

[1] The current Secretary of State is automatically substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

However, Rhone's retaliatory hostile work environment claims fail because in addition to their not being materially adverse, she fails to allege a causal connection between the acts of which she complains and her prior protected activity. A retaliatory hostile work environment claim "alleges that [a plaintiff] was subjected to an abusive working environment in retaliation for having engaged in protected activity by complaining of discrimination." *Simien v. Mayorkas*, Civ. A. No. 23-888, 2024 U.S. Dist. LEXIS 50060, *13-14 (D.D.C. March 21, 2024) quoting *Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016). Rhone's hostile work environment claim fails because she cannot establish: (1) that any of the conduct about which she complains was based on either her gender or race, or in retaliation for some protected activity; and (2) that the conduct about which she complains was sufficiently severe or pervasive so as to alter the conditions of her employment. Her discrimination claims also fail because her allegations do not rise to the level of actionable personnel actions and because she fails to allege a causal connection to her protected stats and prior EEO activity. This Court should therefore dismiss the Complaint, except for Rhone's claim that she was not selected for one of five Team Lead positions in or around May 2023 on the basis of her race (the "race-based non-selection claim"), which Defendant denies but is sufficiently pled to survive the present motion to dismiss.

## STATEMENT OF FACTS

For the purpose of this motion, Defendant presumes the facts contained in the Complaint are true. Rhone is a Black female diagnosed with ADHD and anxiety who, at all relevant times, worked as an EEO Specialist at the Department of State (the "Department"). Compl ¶¶ 2, 13, 17-19. Since her hire in 2016, Rhone has been able to perform essential functions of her position and has had good performance reviews. Compl. ¶¶ 21, 41.

In February 2017, Rhone resigned as a board member of an employee affinity group called Blacks In Government on the instructions of her supervisor. Compl. ¶¶ 44-47. She was told that

this was due to a "policy decision" and a rule applicable to her position.  Compl. ¶¶ 46-47.  She claims that this was race-based discrimination, as a White colleague was permitted to remain on a similar board, which Rhone did not discover until May 2023.  Compl. ¶¶ 49-50.

Beginning in 2020, Rhone alleges that she was subjected to "unreasonable workloads" with multiple tasks and short time frames.  Compl. ¶¶ 57, 67-68.  This includes being assigned seventeen cases while she was on medical leave in October 2023.  Compl. ¶¶ 77-80.  Additionally, Rhone alleges that her requests for workload assistance were not addressed, while requests by White colleagues were addressed.  Compl. ¶¶ 82-88.

In January 2023, the Department announced five openings for Team Lead positions across three different teams.  Compl. ¶¶ 24-28.  Rhone applied for all five positions and was interviewed for them in May 2023.  Compl. ¶¶ 29-38.  She was not, however, selected for any of the five positions.  Compl. ¶ 39.  One of the positions was filled by a White female.  Compl. ¶ 42.[2]

In July 2021, Rhone alleges that she was "chastised" by her supervisor for asking a question about email processing.  Compl. ¶ 89.  In June 2022, Rhone took sick leave but virtually attended a team meeting for the Executive Leadership Program.  Compl. ¶ 61-64.  Rhone alleges that she was "chastised" by her supervisor during that call.  Compl. ¶ 64.  And in July 2023, Rhone alleges she was again "berated" by a different supervisor during a Teams call.  Compl. ¶¶ 91-101.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss assesses the sufficiency of a complaint, testing whether the plaintiff has pled sufficient facts to state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint

---

[2]   Rhone does not identify the individuals who were selected for the other four positions except by initials (Compl. ¶ 40) and does not provide any details as to their protected characteristics, if any.  *See generally* Compl.

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Twombly*, 550 U.S. at 570. In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## ARGUMENT

Rhone's Complaint should be partially dismissed for failure to state a claim, pursuant to Rule 12(b)(6), with the only remaining claim being her race-based non-selection claim. *First*, the allegations on which Rhone bases her claims are not adverse personnel actions which are actionable under either Title VII or the Rehabilitation Act. *Second*, Rhone fails to plausibly allege a nexus between the alleged discrimination and her protected characteristics. *Third*, Rhone has failed to plead a hostile work environment.

### I.   Rhone's Claims Are Not Based on Personnel Actions

Rhone's claims (other than her race-based non-selection claim) are based on allegations of a large workload, having to quit the board of an employee affinity group, and being chastised on

three occasions. However, these are not personnel actions sufficient to support a claim of discrimination nor adverse actions sufficient to support a claim of retaliation.

First, the federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination[.]" 42 U.S.C. § 2000e-16(a). The Civil Service Reform Act defines "personnel actions" to include an appointment, promotion, disciplinary action, transfer or reassignment, reinstatement, decision concerning pay, benefits, or awards. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi). This definition includes other, unenumerated "change[s] in duties, responsibilities, or working conditions" only if they are "significant." *Id.* The Supreme Court in *Babb v. Wilkie*, 589 U.S. 399, 405 (2020), agreed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage," and assumed it had the same meaning for purposes of the federal-sector provisions of the Age Discrimination in Employment Act ("ADEA"), which parallel those of Title VII. *Compare* 29 U.S.C. § 633a(a) (ADEA), *with* 42 U.S.C. § 2000e-16(a) (Title VII).

The Supreme Court in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (Apr. 17, 2024), recently clarified the standard applicable to private and state and local government employers for assessing the existence of an adverse action under Title VII. *Id.* at 974–76 (discussing 42 U.S.C. § 2000e-2(a)(1)). In *Muldrow*, the Supreme Court rejected a reading requiring an employee to demonstrate that an alleged transfer resulted in "significant" harm to be actionable under the non-federal provisions of Title VII. *Id.* The Court reasoned that while an employee "must show *some harm* respecting an identifiable term or condition of employment" the employee need not show that harm caused "significant disadvantages[.]" *Id.* at 974 (emphasis added; "To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or

condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.'"). Notably, the Court's holding in *Muldrow* effectively displaces the decision rendered by the en banc D.C. Circuit in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022). *See Muldrow*, 144 S. Ct. at 979–80 (Kavanaugh, J., concurring) (noting that the Court's standard of "some harm" differs from that described in *Chambers*). Accordingly, were the federal sector provisions of Title VII coextensive with those applicable to non-federal employers, an employee attempting to bring a Title VII claim must identify an alleged event affecting their "compensation, terms, conditions, or privileges of employment" that caused "some harm." *Id.* But the provisions at issue here applicable to Defendant differ from those applicable to non-federal employers. The non-federal provision of Title VII (§ 2000e-2(a)(1)) considered by the Court in *Muldrow* uses different language from the provision of Title VII applicable to the federal government (§ 2000e-16(a)). Specifically, the non-federal provisions of Title VII outlaw discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), whereas the federal provisions prohibit discrimination with respect to "personnel actions," 42 U.S.C. § 2000e-16(a). The Court should honor Congress's choice to create different standards for federal and non-federal employers and apply the text of Title VII as written.

The difference in wording is meaningful as the Supreme Court has ruled in considering similar text in the ADEA, which has different provisions for federal and non-federal employers. *Babb*, 589 U.S. at 410 ("as we previously recognized, the ADEA's private- and public-sector provisions are 'couched in very different terms'" (quoting *Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008)). In *Gomez-Perez*, the Court considered the wording of the ADEA's federal sector provision, holding, "[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's

federal-sector discrimination ban." 553 U.S. at 487 (comparing text and collecting citations). In so doing, the Court noted that while "Title VII's federal-sector provision incorporates certain private-sector provisions" it does not incorporate them all. *Id.*

In *Babb*, 589 U.S. at 410, the Supreme Court further explained the differences in the wording of the federal and non-federal provisions of the ADEA, which again are almost identical to those found in Title VII. *See id.* The Court emphasized that equating the scope of the two provisions was misplaced when they used different words. It noted, "Congress could have easily" used the same language in both provisions "[b]ut Congress did not choose this route. Instead, it 'deliberately prescribed a distinct statutory scheme applicable only to the federal sector,' and in doing so, it eschewed the language used in the private-sector provision[.]" *Id.* at 412 (citations omitted). In considering the distinct federal sector provisions of the ADEA, the Court observed that the ADEA's federal sector provisions, like those of Title VII, concern "personnel actions." *Id.* at 405. Specifically, it reasoned:

> Section 633a(a) concerns "personnel actions," and while the ADEA does not define this term, its meaning is easy to understand. The Civil Service Reform Act of 1978, which governs federal employment, broadly defines a "personnel action" to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews. *See* 5 U.S.C. § 2302(a)(2)(A). That interpretation is consistent with the term's meaning in general usage, and we assume that it has the same meaning under the ADEA.

*Id.*

Some judges in this District have declined to adopt this straightforward textual application of the Title VII and ADEA federal sector standards in the wake of *Chambers*, relying on pre-*Babb* precedents such as *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), which construed Title VII's federal and non-federal provisions as coterminous. *See, e.g.*, *Bain v. Off. of Att'y Gen.*, Civ. A. No. 21-1751 (RDM), 2022 WL 17904236, at *21 (D.D.C. Dec. 23, 2022) (citing pre-*Babb* authorities); *Garza v. Blinken*, Civ. A. No. 21-2770 (APM), 2023 WL 2239352, at *5 (D.D.C.

7

Feb. 27, 2023) (same). Respectfully, following this path runs contrary to the clear and necessary holding of *Babb* and the plain text of the federal anti-discrimination provisions. For example, in *Czekalski*, the D.C. Circuit in setting forth the standard for an adverse action noted that while the federal sector "language differs from that of the provision governing private employers, we have held that the two contain identical prohibitions." *Czekalski*, 475 F.3d at 363 (citation omitted; collecting cases). But in *Babb*, decided more than a decade after the D.C. Circuit's decision in *Czekalski*, the Supreme Court rejected that theory and instead held that when anti-discrimination statutes use different language in their federal and non-federal provisions, they should not be interpreted the same. *Babb*, 589 U.S. at 411 (the federal sector provision of the ADEA, which is nearly identical to Title VII, "is markedly different from the language" of its non-federal provision and warrants a different standard).

Accordingly, for an event to be actionable under the federal sector provisions of Title VII (and the Rehabilitation Act[3]) the identified event must either be an enumerated "personnel action" under the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)–(xi), or fall into that term's catch-all (i.e., "any other significant change in duties, responsibilities, or working conditions[,]" 5 U.S.C. § 2302(a)(2)(A)(xii)), and the employee must have suffered "some harm" from the alleged event (i.e., rendering the event "adverse")). Meanwhile, claims of retaliation require a showing of a "materially adverse action," a standard which remains untouched by *Muldrow*. *See Black*, 2023 WL 3055427, *9-10; *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

Nothing in Rhone's Complaint (other than arguably her race-based non-selection claim) rises to this level. Having a heavy workload is not a personnel action that relates to a change in

---

[3] The D.C. Circuit has long considered the relevant language of the Rehabilitation Act as identical to the Title VII standard. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1196-97 (D.C. Cir. 2008); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010).

position or a decision concerning pay or benefits. *Koch v. Shapiro*, 759 F. Supp. 2d 67, 74 (D.D.C. 2011). At best, such a claim is a "subjective belief" that will not support a claim. *Id.* "[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hairston v. Vance-Cooks*, 773 F.3d 266, 274 (D.C. Cir. 2014) (quoting *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)). Nor has Rhone anywhere alleged that her workload was atypically larger than her colleagues. Similarly, Rhone's board position on the employee affinity group was not part of her job description or responsibilities, and the limitation imposed by the Department on her leadership role there is not actionable. And being "chastised" by a supervisor, without any attendant impact on a performance review, pay, or benefit, is not a personnel action that will support a discrimination claim. *See Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29-30 (D.D.C. 2012) (verbal reprimands and criticism are not adverse actions). Such assertions, without more, constitute the "simple lack of good manners that are not actionable[.]" *Paschal v. District of Columbia*, 65 F. Supp. 3d 172, 180 (D.D.C. 2014) (internal quotations omitted); *see also McLaughlin v. Holder*, 828 F. Supp. 2d 230, 249 (D.D.C. 2011).

In addition, Plaintiff cannot demonstrate that having a heavy workload, having a limitation placed on her leadership role in an employee affinity group, and being "chastised" by a supervisor, were sufficiently materially adverse to satisfy her retaliation claims. Although "[a]ctions giving rise to [retaliation] claims are not limited to discriminatory actions that affect the terms and conditions of employment but reach any harm that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (internal quotation marks and citations omitted); yet not every adverse action will support a retaliation claim. The qualification requiring material adversity "separate[s] significant from trivial harms" and forbids claims based on "petty slights, minor annoyances, and simple lack

of good manners." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006). Further, restrictions that "impose[] a negligible burden on the plaintiff's employment conditions mitigate any deterrent effect a reasonable employee would ascribe to them." *Baloch v. Norton*, 517 F. Supp. 2d 345, 356 (D.D.C. 2007), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008).[4] The same "material adversity" analysis applies for retaliation under the Rehabilitation Act. *See Baloch*, 550 F.3d at 1198, n.4 (applying same "material adversity" test in the context of ADEA and Rehabilitation Act retaliation).

The "[c]ourts have consistently held that . . . [an] increased workload," standing alone, does not rise to the level of "adverse employment action." *Saba v. U.S. Dep't of Agriculture*, 26 F. Supp. 3d 16, 25 (D.D.C. 2014); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 29-30 (D.D.C. 2003) (collecting cases); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes."); *Nichols v. Vilsack*, Civ. A. No. 13-1502, 2015 U.S. Dist. LEXIS 173138, *34 (D.D.C. May 19, 2014). For the reasons previously stated as to why having limitations placed on being on the board of an employee affinity group and being "chastised" by a supervisor are not personnel actions, these claims are neither materially adverse.

Even if this Court declines to follow the controlling precedent of *Babb* and instead determines that the "some harm" standard applicable to private-sector Title VII actions is the appropriate mode of analysis, Rhone's claims still fail. Rhone's allegations that she became stressed from her workload and the comments of her supervisors are not an actionable harm but

---

[4]   The D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870, 878-82 (D.C. Cir. 2022), did not purport to affect the standard for Title VII or Rehabilitation Act retaliation claims.

merely the ordinary trials and tribulations of the workplace. *See Roberston v. Dodaro*, 767 F. Supp. 2d 185, 200 (D.D.C. 2011). "The discrimination laws do not guarantee employees a stress-free work environment." *Lester v. Natsios*, 290 F. Supp. 2d 11, 30 n.7 (D.D.C. 2003).

Rhone's claims, other than her race-based non-selection claim, should therefore be dismissed.

## II.     Rhone Fails to Plead a Nexus to a Protected Class

To sustain her claims, Rhone must plead both an adverse (or materially adverse) action and that the action occurred because of her protected characteristics—sex, race, or disability—or prior EEO activity. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "A plaintiff must prove both elements to sustain a discrimination claim." *Id.*

*First*, nowhere in her Complaint does Rhone allege a single statement, conversation, or other evidence supporting an inference of discrimination based on her disability. Although she claims that her supervisors were aware of her disability at all times, she does not connect the non-selection, the resignation from the employee group board, her workload, or the comments of her supervisors to her ADHD or anxiety. *See generally* Compl. The closest she comes to any allegation relating to her disability is the claim that she was assigned new cases while out on medical leave. Compl. ¶ 77. But she offers no other factual support that would permit the inference that these employees were similarly situated to her.

*Second*, Rhone does not connect any of her claims to her being female. As with her disability claim, she does not allege a single statement, conversation, or other evidence supporting an inference of discrimination based on the protected characteristic of her sex. The only comparator Rhone provides with respect to her non-selection claim was also female. Compl. ¶ 42. Two of the three members of the interview panel were female. Compl. ¶ 36. At all relevant times, all of Rhone's immediate supervisors were female. Compl. ¶¶ 14-16. This includes the

11

supervisors who allegedly assigned Rhone her heavy workload (Compl. ¶ 57) and the supervisors who criticized Plaintiff on three occasions (Compl. ¶¶ 64, 89, 91). And the employee who was permitted to remain on the external employee group was also female. Compl. ¶ 49. There is, in short, no basis from which this Court could connect Rhone's claims to her sex.

*Third*, Rhone does not connect her claims—with the exception of the non-selection claim—to her race. Again, she does not allege a single statement, conversation, or other evidence supporting an inference of discrimination based on her race. Although the board position from which she was asked to resign was for a race-based affinity group (Blacks In Government), she concedes that the reason she was asked to resign was because of a change to a policy decision. Compl. ¶¶ 45-46. Indeed, given Rhone's position as an EEO Specialist for the Department, the desire to avoid confusion with official statements by the Department is a valid and non-pretextual basis to ask an employee like Rhone to step down from leadership. Rhone's workload is also unconnected to her race; in fact, Rhone admits that her entire team consisted of Black employees at the time of her allegedly excessive workload. Compl. ¶ 81. And Rhone provides no details regarding the substance of the criticism she faced on three occasions, thus providing this Court no basis from which to infer that the criticism was causally connected to her race.

*Finally*, even if this court were to find that Plaintiff's claims were materially adverse, Rhone does not connect her claims to her prior EEO activity. To establish a retaliation claim, an employee must allege that (1) she engaged in a protected activity, (2) she was subjected to adverse action by the employer, and (3) there existed a causal link between the adverse action and the protected activity. *Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006). As with the other claims, she does not allege a single statement, conversation, or other evidence supporting an inference of discrimination based on her prior activity. Although she claims to have engaged in

12

protected EEO activity in 2017 and in May 2020 (Compl. ¶¶ 54-55), she does not connect any of the claims to either the basis of that activity or knowledge thereof. There are no allegations that many of the individuals named in the Complaint were even aware of her prior activity.

Additionally, the temporal disconnect between the 2017, 2020, and 2023 is too great to support an inference of causality. *See Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (collecting cases and holding three months or more is insufficient to support an inference of causation); *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019). Rhone's alleged activity in 2017 and 2020 does not support an inference of retaliatory non-selection in 2023, nor of retaliation in the criticisms in 2021 and 2022. While Rhone alleges her workload increased in 2020, she provides no dates of either that increase nor of her alleged EEO activity in 2020, and this Court has no basis to infer that the two are related without such support. And there are no other allegations that would allow this Court to infer a connection between Rhone's prior EEO activity and the non-selection, the board resignation, the workload, or the criticism.

In short, Rhone has not pleaded facts that connect any of her claims to any of her protected classes, with the exception of her race-based non-selection claim. As such, her claims are insufficiently supported to survive a motion to dismiss. *See Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 103 (D.D.C. 2019) (dismissing complaint where plaintiff made no factual allegations connecting the adverse action to the protected class); *Easaw v. Newport*, 253 F. Supp. 3d 22, 30-31 (D.D.C. 2017) (dismissing complaint where plaintiff "has simply not alleged facts that would even remotely give rise to an inference of discrimination by the defendants she has named"). Thus, this Court should dismiss the retaliation claims.

### III. Rhone Fails to State a Claim for Hostile Work Environment

Rhone has not satisfied the legal standards to adequately plead a case of hostile work environment. Her claim of a hostile work environment appears to be based on the same general

actions as her claims of disparate treatment, as she does not distinguish between the two in her counts and claims.

The elements of a hostile work environment claim are:

(1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.

*Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012). The analysis requires the Court to examine "'all the circumstances,' including the 'frequency of the [alleged] discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). A claim of hostile work environment requires a level of harassment that "permeates the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment," or else it will not suffice. *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (citing *Arbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999)).

Here, Rhone does not complain of any physical threats, but rather of being criticized on three occasions, given a heavy workload, and other ordinary workplace tribulations. She does not allege that any of these actions affected her performance; in fact, she alleges that she had consistently received "excellent performance evaluations" for eight years. Compl. ¶ 41. "[S]imply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim." *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 171 (D.D.C. 2013) (collecting cases); *see also Porter v. Jackson*, 668 F. Supp. 2d 222, 235-36 (D.D.C. 2009) (granting summary judgment on hostile work environment claims based on allegations that supervisor mocked and

14

embarrassed plaintiff); *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 194, 210 (D.D.C. 2017) (granting summary judgment on hostile work environment claims based on allegations that supervisor was "[s]tarting, or failing to stop, destructive rumors or gossip amongst [her] coworkers"). Rhone has not adequately pled a claim for hostile work environment, and this Court should therefore dismiss this claim.

## CONCLUSION

Rhone's Complaint does not survive review under Rule 12(b)(6) because it is not based on actionable personnel actions, it fails to allege materially adverse claims, it does not connect her claims to either her protected characteristics or protected activity, and it does not plead a hostile work environment. This Court should therefore grant Defendant's motion and dismiss the Complaint in part, allowing only Rhone's claim of race-based non-selection to proceed. A proposed order is attached.

Dated: April 3, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     */s/ Kartik N. Venguswamy*
    KARTIK N. VENGUSWAMY,
      D.C. Bar No. 983326
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-1790
    kartik.venguswamy@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDETTE RHONE,<br><br>  *Plaintiff*,<br><br> v.<br><br>MARCO A. RUBIO,<br>Secretary of State,[5]<br><br>  *Defendant*. | Civil Action No. 24-3389 (RC) |

### **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss in part, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED; and it is further

ORDERED that Plaintiff's claims are DISMISSED with the exception of her claim of discriminatory non-selection based on race.

SO ORDERED.

_____                           _____
Dated                                                                                  United States District Judge

---

[5] The current Secretary of State is automatically substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

16